21-cr-57 SRN/TNL

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

v.

(1) KHALID MOHAMED SHARIF,
   also known as "Hassan Abdi Hussein"
(2) ELIFAA HENRY KINYAIYA,
(3) VARBAR B. KANNEH
(4) ESKENDER M. YOUSUF,
(5) ZELDA LIBERTY RUSSELL,
(6) SAFIYA MOHAMED ARTAN,
(7) HODAN ABDI HASHI,
(8) OMAR ALI OSMAN, and
(9) UBAH HASSAN HAGI,

Defendants.

**INDICTMENT**

18 U.S.C. § 2
18 U.S.C. § 1343
18 U.S.C. § 1349

THE UNITED STATES GRAND JURY CHARGES:

## **OVERVIEW**

1.     From at least in or about August 2016 through in or about December 2017, the Defendants participated in a scheme with others known and unknown to the Grand Jury to defraud the Medicaid program.  The scheme involved mental health practitioners submitting fraudulent claims for mental health services purportedly provided to Medicaid recipients through the Adult Rehabilitative Mental Health Services program.  The scheme also involved interpreters submitting fraudulent claims through their respective employers for interpretation services purportedly provided to Medicaid recipients during the mental

SCANNED

MAR 1 1 2021

U.S. DISTRICT COURT ST. PAUL

U.S. v. Khalid Mohamed Sharif, et al.

health appointments. Neither the mental health services nor the ancillary interpretation services were rendered. For nearly 16 months, however, the Defendants defrauded the Medicaid program by submitting claims for reimbursement and receiving payment for services not rendered to Medicaid beneficiaries.

## GENERAL ALLEGATIONS

At times relevant to this Indictment:

### Relevant Entities and Individuals

2.      Live Better LLC ("Live Better") was a company that advertised that it provided various services to patients at their homes. The advertised services included: Adult Rehabilitative Mental Health Services ("ARMHS"), initial life support training, respite care, and supported living services. Live Better had office locations in Roseville and Minneapolis, Minnesota.

3.      Company A was a Minnesota corporation providing various behavioral health services, including individual and group therapy, psychological testing, and psychiatry services in Minnesota.

4.      Defendant **KHALID MOHAMED SHARIF** was the registered manager for Live Better. **SHARIF** was responsible for coordination with Company A, hired mental health practitioners and interpreters to work for Live Better, and directed the mental health practitioners and interpreters regarding patient schedules and pressured them regarding the amount of time they should submit for reimbursement from Medicaid. **SHARIF** submitted and caused to be submitted to the Minnesota Medicaid program claims for mental health services and interpretation services that were not provided.

2

U.S. v. Khalid Mohamed Sharif, et al.

     5.     Defendant **ELIFAA HENRY KINYAIYA** was a mental health practitioner employed by **SHARIF** and Live Better. **KINYAIYA** prepared and signed client progress notes for mental health services that he did not provide, and submitted and caused to be submitted to the Minnesota Medicaid program claims for mental health services that he did not provide.

     6.     Defendant **VARBAR B. KANNEH** was a mental health practitioner employed by **SHARIF** and Live Better. **KANNEH** prepared and signed client progress notes for mental health services that he did not provide, and submitted and caused to be submitted to the Minnesota Medicaid program claims for mental health services that he did not provide.

     7.     Defendant **ESKENDER M. YOUSUF** was a mental health practitioner employed by **SHARIF** and Live Better. **YOUSUF** prepared and signed client progress notes for mental health services that he did not provide, and submitted and caused to be submitted to the Minnesota Medicaid program claims for mental health services that he did not provide.

     8.     Defendant **ZELDA LIBERTY RUSSELL** was a mental health practitioner employed by **SHARIF** and Live Better. **RUSSELL** prepared and signed client progress notes for mental health services that she did not provide, and submitted and caused to be submitted to the Minnesota Medicaid program claims for mental health services that she did not provide.

     9.     Defendant **SAFIYA MOHAMED ARTAN** was an interpreter purportedly providing interpreter services to Live Better clients through her employer, Arch Language

U.S. v. Khalid Mohamed Sharif, et al.

Network, which then billed those services to the Minnesota Medicaid program. **ARTAN** prepared and signed interpreter service verification forms for interpretation services that she did not provide, and submitted and caused to be submitted to the Minnesota Medicaid program claims for mental health services that she did not provide.

10.    Defendant **HODAN ABDI HASHI** was an interpreter purportedly providing interpreter services to Live Better clients through her employer, Arch Language Network, which then billed those services to the Minnesota Medicaid program. **HASHI** prepared and signed interpreter service verification forms for interpretation services that she did not provide, and submitted and caused to be submitted to the Minnesota Medicaid program claims for mental health services that she did not provide.

11.    Defendant **OMAR ALI OSMAN** was an interpreter purportedly providing interpreter services to Live Better clients through his employer, Arch Language Network, which then billed those services to the Minnesota Medicaid program. **OSMAN** prepared and signed interpreter service verification forms for interpretation services that he did not provide, and submitted and caused to be submitted to the Minnesota Medicaid program claims for mental health services that he did not provide.

12.    Defendant **UBAH HASSAN HAGI** was an interpreter purportedly providing interpreter services to Live Better clients through her employer, Arch language Network, which then billed those services to the Minnesota Medicaid program. **HAGI** prepared and signed interpreter service verification forms for interpretation services that she did not provide, and submitted and caused to be submitted to the Minnesota Medicaid program claims for mental health services that she did not provide.

4

U.S. v. Khalid Mohamed Sharif, et al.

### The Minnesota Medicaid Program

13.    The Medicaid program ("Medicaid") was a program jointly funded by the federal government and individual states to assist low-income persons and other qualified persons, commonly referred to as "Medicaid beneficiaries," in paying for the costs of health care. In the State of Minnesota, the Medicaid program was administered by the Minnesota Department of Human Services ("DHS").

14.    DHS used two basic methods to provide services. The method DHS employed to provide medical services through Medicaid in this case was through the Prepaid Medical Assistance Program ("PMAP"), through which health care organizations contracted with DHS to provide health care services to Medicaid recipients on a managed care basis. The health care organizations then contracted with health care providers to provide medical care to Medicaid patients. Under the PMAP program, the health care providers submitted claims to the health care organization, rather than directly to DHS, for the services provided to Medicaid recipients.

15.    The Adult Rehabilitative Mental Health Services ("ARMHS") program is one category of mental health services available to Medicaid recipients. As defined by Minnesota State Statute 256B.0623, Subd. 2., "adult rehabilitative mental health services" means "mental health services which are rehabilitative and enable the recipient to develop and enhance psychiatric stability, social competencies, personal and emotional adjustment, independent living, parenting skills, and community skills, when these abilities are impaired by the symptoms of mental illness." ARMHS services can be rendered at various locations in the community, but are typically provided in the recipient's home. DHS

U.S. v. Khalid Mohamed Sharif, et al.

regulations govern what can and cannot be billed to Medicaid, and for certain services

Mental Health Practitioners are not permitted to bill if contact with a Medicaid recipient

is conducted by telephone.

16.   UCare Minnesota ("UCare") was a health care organization serving patients

in Minnesota and western Wisconsin.  UCare contracted with DHS to provide health care

coverage to Medicaid beneficiaries.   UCare provided coverage for medical services,

including coverage for mental health services, as well as certain ancillary services attendant

to medical and mental health appointments, including transportation to and from those

appointment and any necessary interpretation services provided at those appointments.

UCare is a PMAP and the mental health services, as well as certain ancillary services

described herein, are covered under the PMAP program.

17.   Health care providers that provide services to Medicaid recipients can apply

for and obtain a "provider number." A health care provider issued a provider number can

submit claims to Medicaid to obtain reimbursement for products, services, and items

provided to beneficiaries.  Medicaid provides reimbursement only for health care services

that were medically necessary, actually provided, and provided as represented in the

reimbursement claim.  Claims for reimbursement are required to set forth, among other

things, the recipient's name, the recipient's recipient identification number, the date the

product, service, or item was provided, the cost of reimbursement, and the name and

provider number of the health care provider who provided the product, service, or item.

18.   By becoming a participating provider in Medicaid, providers agree to abide

by the laws, rules, regulations, policies, and procedures that govern reimbursement by

U.S. v. Khalid Mohamed Sharif, et al.

Medicaid. When a provider submits claims to Medicaid, the provider certifies that the contents of the claim are true, correct, and complete and that the claim was prepared and submitted in compliance with the applicable laws and regulations governing the submission of claims.

19.     Participating providers are required to follow DHS billing rules designed to ensure the submission of accurate and honest reimbursement of claims for services actually provided. The requirements regarding claims submission to DHS are set forth in the Minnesota Health Care Programs ("MHCP") Provider Manual.

20.     Such requirements include, but are not limited to, the following:

a.  Billing for Services Actually Provided.  Providers who contract with DHS agree to bill for services actually provided.  Claims are submitted electronically to DHS or the PMAP.  The provider submits a claim under a recipient's individual identifying number.  The claim provides a procedure code, indicating the service, along with the provider's number for direct payment to the provider.

b.  Billing Only After Services Have Been Provided.  Claims are submitted to DHS after covered services have been rendered.  Providers are not permitted to make reimbursement claims for services purportedly to be provided in the future

21.     Payment to providers is typically done by electronic funds transfer (EFT) by the respective PMAP.

**The Scheme to Defraud**

U.S. v. Khalid Mohamed Sharif, et al.

22.     In or about August 2016, **SHARIF** entered into a contract on behalf of Live Better with Company A.  Under the terms of the contract, Live Better's mental health practitioners would provide ARMHS services to Live Better clients, and would supply an interpreter for Live Better clients needing interpretation services.  Company A would provide supervision of Live Better's mental health practitioners in accordance with the practitioner supervision requirements under the ARMHS program, and would submit claims for reimbursement for ARMHS services rendered by Live Better's mental health practitioners and interpreters.  The contract specifically required Live Better to submit accurate documentation to Company A that reflected billable client time as defined by the Minnesota ARMHS program.

23.     Live Better did not have its own DHS "provider number" and therefore could not independently submit claims to Medicaid for reimbursement for any mental health services and ancillary interpreter services rendered to Medicaid beneficiaries.   For example, Live Better employees could not submit claims to Medicaid for ARMHS sessions.

24.     By entering into the contract with Company A, **SHARIF** and the other Defendants could use Company A's provider number to submit or cause to be submitted claims for reimbursement for ARMHS sessions and the related interpreter services for those sessions.

25.     In his operation of Live Better, **SHARIF** employed Mental Health Practitioners ("MHPs"), including **KINYAIYA, KANNEH, YOUSUF,** and **RUSSELL,** who were purportedly hired to provide mental health services to individual Live Better

U.S. v. Khalid Mohamed Sharif, et al.

clients, including those clients who were Medicaid beneficiaries. The MHPs were responsible for providing mental health services to Live Better clients, and for preparing and signing paper progress notes and paper Individual Treatment Plans documenting the provision of mental health services. The MHCP Provider Manual sets forth the requirements for supervision of MHPs, and states: "MHPs are not eligible to enroll with MHCP; they must be under clinical supervision of a mental health professional..." At times relevant to this Indictment, Company A provided the supervision of the Live Better MHPs for purposes of their purported ARMHS sessions. According to the requirements in the MHCP Provider Manual, this supervision was supposed to include: overseeing the quality and outcome of the MHP's work with the recipients; reviewing, approving, and signing the diagnostic assessments, individual treatment plans, and treatment plan reviews of recipients; and reviewing and approving the progress notes of recipients treated by the MHPs according to the MHP's supervision plan.

26.    In order to maximize the reimbursements received from the Medicaid program, **SHARIF** and the MHPs also conspired with various interpreters, including **ARTAN, HASHI, OSMAN, HAGI**, and others known and unknown to the Grand Jury, who purportedly provided interpretation services during the MHPs' ARMHS sessions with Live Better clients.

27.    **SHARIF**, and others working at his direction, including those individuals identified herein, routinely obtained the personal information, including the names, and Medicaid recipient identification numbers, of Medicaid beneficiaries.

U.S. v. Khalid Mohamed Sharif, et al.

28.    **SHARIF**, and others working at his direction, including those individuals identified herein, used the Medicaid beneficiaries' information to submit false and fraudulent claims for reimbursement for mental health services and interpretation services that were not actually provided.  **SHARIF** and others working at his direction, including those individuals identified herein, submitted claims for Medicaid recipients who they did not meet with for ARMHS sessions, or submitted claims for times that were in direct conflict with the MHP's actual full time job, or submitted claims for times when they were outside of the United States.

29.    The Medicaid program paid Company A, which in turn paid Live Better, over $1.4 million between approximately August 2016 and December 2017 as a result of these false and fraudulent claims submissions.

## COUNT 1
(Conspiracy to Commit Wire Fraud)

30.    The allegations set forth in paragraphs 1 through 29 of this Indictment are re-alleged as if fully set forth herein.

31.    From at least in or about August 2016 through in or about December 2017, in the State and District of Minnesota and elsewhere, the Defendants,

**KHALID MOHAMED SHARIF,**
also known as "Hassan Abdi Hussein,"
**ELIFAA HENRY KINYAIYA,**
**VARBAR B. KANNEH,**
**ESKENDER M. YOUSUF,**
**ZELDA LIBERTY RUSSELL,**
**SAFIYA MOHAMED ARTAN,**
**HODAN ABDI HASHI,**
**OMAR ALI OSMAN,**
and

10

U.S. v. Khalid Mohamed Sharif, et al.

**UBAH HASSAN HAGI,**

did knowingly and willfully conspire, combine, and agree with each other and with other persons known and unknown to the Grand Jury, to commit the crime of wire fraud, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-19
(Wire Fraud)

32.     The allegations set forth in paragraphs 1 through 31 of this Indictment are re-alleged as if fully set forth herein.

33.     On or about the following dates, in the State and District of Minnesota and elsewhere, the Defendants, as named below in each count, each aiding and abetting and being aided and abetted by others known and unknown to the Grand Jury, having devised and intending to devise the scheme and artifice described above, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds for the purpose of executing and attempting to execute such scheme and artifice:

| Count | Date of Wire (on or about) | Defendant(s) | Wire Details |
|-------|----------------------------|--------------|--------------|
| 2 | 12/16/2016 | KINYAIYA | Electronic submission of mental health services claim for patient S.A. to UCare, date of service 11/20/2016 |
| 3 | 1/06/2017 | ARTAN | Electronic submission of interpretation services claim for patient S.A. to UCare, date of service 11/20/2016 |

U.S. v. Khalid Mohamed Sharif, et al.

| Count | Date of Wire (on or about) | Defendant(s) | Wire Details |
|---|---|---|---|
| 4 | 12/23/2016 | KINYAIYA | Electronic submission of mental health services claim for patient S.A. to UCare, date of service 12/04/2016 |
| 5 | 6/09/2017 | ARTAN | Electronic submission of interpretation services claim for patient A.E. to UCare, date of service 12/25/2016 |
| 6 | 03/03/2017 | KANNEH | Electronic submission of mental health services claim for patient A.A. to UCare, date of service 02/03/2017 |
| 7 | 3/10/2017 | RUSSELL | Electronic submission of mental health services claim for patient O.T. to UCare, date of service 02/08/2017 |
| 8 | 3/31/2017 | HAGI | Electronic submission of interpretation services claim for patient O.T. to UCare, date of service 02/08/2017 |
| 9 | 3/24/2017 | RUSSELL | Electronic submission of mental health services claim for patient I.F. to UCare, date of service 02/16/2017 |
| 10 | 4/21/2017 | HAGI | Electronic submission of interpretation services claim for patient I.F. to UCare, date of service 02/16/2017 |
| 11 | 5/19/2017 | OSMAN | Electronic submission of interpretation services claim for patient M.Y. to UCare, date of service 04/05/2017 |
| 12 | 9/21/2018 | YOUSUF | Electronic submission of mental health services claim for patient T.A. to UCare, date of service 10/12/2017 |
| 13 | 11/17/2017 | OSMAN | Electronic submission of interpretation services claim for patient T.A. to UCare, date of service 10/12/2017 |

U.S. v. Khalid Mohamed Sharif, et al.

| Count | Date of Wire (on or about) | Defendant(s) | Wire Details |
|-------|---------------------------|--------------|--------------|
| 14 | 11/3/2017 | YOUSUF | Electronic submission of mental health services claim for patient S.A. to UCare, date of service 10/22/2017 |
| 15 | 12/01/2017 | HASHI | Electronic submission of interpretation services claim for patient S.A. to UCare, date of service 10/22/2017 |
| 16 | 9/21/2018 | KANNEH | Electronic submission of mental health services claim for patient A.A. to UCare, date of service 11/05/2017 |
| 17 | 1/26/2018 | HASHI | Electronic submission of interpretation services claim for patient M.D. to UCare, date of service 12/11/2017 |
| 18 | 06/30/2017 | SHARIF | Electronic funds transfer from Company A to Live Better, LLC in the amount of $139,607.94 |
| 19 | 11/30/2017 | SHARIF | Electronic funds transfer from Company A to Live Better, LLC in the amount of $177,742.32 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE ALLEGATIONS

34.     Counts 1 through 19 of this Indictment are hereby realleged and incorporated as if fully set forth herein by reference, for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7), and Title 28, United States Code, Section 2461(c).

35.     Upon conviction of the offenses alleged in Counts 1- 19 of this Indictment, the defendants shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(7) and Title 18, United States Code, Section 981(a)(1)(C), in conjunction

U.S. v. Khalid Mohamed Sharif, et al.

with Title 28, United States Code, Section 2461(c), all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses charged in Counts 1 through 19 respectively.

36.    If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____                    _____
ACTING UNITED STATES ATTORNEY                       FOREPERSON